UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**BILLY DALE SANDERS and JUDY DIANNE SANDERS**  **PLAINTIFFS**

**V.**  **CIVIL ACTION NO.1:07CV988 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY**  **DEFENDANT**

## OPINION AND ORDER

The Court has before it the following motions in limine filed by Nationwide Mutual Insurance Company (Nationwide) seeking to exclude:

Evidence Testimony or Argument Relating to Option K Coverage for Replacement Cost [146];

Any and All Testimony, Evidence, and Argument Concerning any Uncompensated Additional Living Expenses [147];

Evidence Testimony or Argument Concerning Debris Removal Coverage or Expenditures [148].

### Evidence of Replacement Cost Coverage
### Motion [146]

The plaintiffs' Nationwide homeowners policy defines "actual cash value":

*"ACTUAL CASH VALUE" means the amount it would cost to repair or replace covered property with material of like kind and quality, less allowance for physical deterioration and depreciation, including obsolescence.*

The policy provides coverage on an "actual cash value" basis, but provides two enhancements of this basic coverage when certain contingencies are met. The first of these two enhancements eliminates depreciation from the equation and provides replacement cost coverage, up to the stated policy limit under the coverages for the insured dwelling (coverage A) and other structures (coverage B). The second enhancement adds 20% in coverage above the stated policy limits if replacement costs this high are actually incurred for the insured dwelling (coverage A).

The policy provides:

***PROPERTY CONDITION*** *(Section I)*

\*   \*   \*

*4.   Loss Settlement. Covered losses will be settled, up to the applicable limit of liability, by **us** paying:*

\*   \*   \*

*b)   the cost to repair or replace without deduction for depreciation for buildings in Coverage A or B based on equivalent construction and use on the same premises except:*

*(1)   **we** will pay no more than the **actual cash value** of the damage until the repair or replacement is made when the cost to repair or replace the damage is more than $1,000 or more than 5 percent of the amount of insurance in this policy on the building, whichever is less.*

*(2)   when you claim loss or damage to buildings on an actual cash value basis, **You** may make claim within 180 days after the loss for any added loss based on the cost to repair or replace.*

*(3)   if you choose not to repair or replace, we will pay only the **actual cash value** of the damaged building, not to exceed the applicable limit of liability.*

Under Policy Coverage Options the policy provides:

***Option K.   Replacement Cost Plus (Dwelling) (increased Coverage A Limit)***. *When a loss covered by this policy occurs to the dwelling in which you live, located at the **residence premises**, **we** will settle losses, subject to applicable deductibles, according to the policy provisions.*

*If the amount actually and necessarily spent to repair or replace the dwelling is more than the Coverage A – Dwelling Limit of Liability, **we** will pay up to a maximum of an additional 20% of the coverage A limit for the additional cost. This additional amount applies only to the dwelling insured under this policy identified as the **residence premises** on the Declarations. This coverage does not increase or affect any other*

> *coverage limit or limit of liability in this policy.  The additional payment is subject to the following provisions:*
>
> ***SPECIAL CONDITIONS***
>
> ***You** must:*
>
> 1. *Insure the dwelling in which you live, located at the residence premises, to 100% of the cost to repair or replace it; and*
> 2. *Accept the annual adjustment in the Coverage A – Dwelling limit of liability due to Inflation Protection Coverage and pay the premium charged; and*
> 3. *Notify us within 90 days of the start of any physical improvement or additions which increase the replacement cost value of your dwelling by $5,000 or more and pay an additional premium due.*
>
> *You must comply with these special conditions or we will pay no more than the policy limit in effect on the date of loss, less applicable deductibles.*

Under these provisions, the plaintiffs' claim is payable on an actual cash value basis if the insured property has not been repaired or replaced.  Plaintiffs have admitted that they do not qualify for the additional coverage (20% above stated policy limits) allowed by Option K.  The plaintiffs contend, however, that they are entitled to recovery on a replacement cost basis because they purchased a new home to substitute for their insured dwelling.

Because replacement cost is a component of the calculation of actual cash value, evidence of replacement cost is admissible at trial.  Nationwide's motion to exclude this evidence will be **DENIED** [146].

### Evidence of Uncompensated Additional Living Expenses and Evidence of Debris Removal Expenses
### Motions [147] [148]

Nationwide has paid the plaintiffs $9,000 for the additional living expenses (ALE) they incurred in leaving their dwelling after the storm.  The Nationwide policy provides:

> **COVERAGE D – LOSS OF USE**
> **We** cover, subject to the coverage limit which is the total limit, all of the following:
> 1. **Additional Living Expense**.  If a covered loss requires **you** to leave the residence premises, we will pay the required increase in living expenses you incur to maintain your normal standard of living.  Payment will be for the shortest time required to repair or replace the premises; or, if you

permanently relocate, for the shortest time required for your household to settle elsewhere. Payment will not exceed the limit of liability shown on the Declarations or 12 months, whichever occurs first. This period of time is not limited by the end of the policy period . . . .

Nationwide contends that the plaintiffs have failed to respond to Nationwide's request for documentation of any additional living expenses the plaintiffs have incurred since the storm.

The record contains a June 20, 2006, cover letter for a $4,000 ALE coverage payment. Along with prior ALE coverage payments ($3,000 on December 16, 2005, and $2,000 on October 19, 2005) this brought Nationwide's total payments to $9,000. This letter indicates that Nationwide's ALE coverage payments were for six months, "the period under investigation." This payment was calculated at $1,500 per month, but it gives no indication why this figure was used or why the payment was for only six of the ten months that had elapsed since Hurricane Katrina. This letter asks the plaintiffs to submit any "documentation and receipts" for expenses incurred in excess of $9,000.

The record also contains a March 20, 2007, letter from Duane Collins (Collins) of Nationwide's claims department. This letter indicates that Collins wanted "to review any documentation of Additional Living Expenses, Wind Pool payment, National Flood Insurance Program claim payment, and to discuss any expert or witness testimony that will be produced."

Any expense documentation that has not been disclosed during discovery will be inadmissible at trial. However, the plaintiffs' testimonies will be admissible, since Nationwide has had a full and fair opportunity to inquire of the plaintiffs on this point during their depositions. Accordingly, this motion will be **GRANTED IN PART** and **DENIED IN PART**. The motion [147] is **GRANTED** as to any documentary evidence of additional living expenses not produced during discovery, and in all other respects the motion is **DENIED**.

Nationwide also asserts that the plaintiffs have failed to respond to requests for documentation of any debris removal expenses the plaintiffs have incurred. Plaintiffs have admitted that they incurred no expenses for debris removal, and this motion [148] is **GRANTED**.

**SO ORDERED** this 17th day of December, 2008.

> s/ L. T. Senter, Jr.
> L. T. SENTER, JR.
> SENIOR JUDGE