**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**BILLY DALE SANDERS and JUDY DIANNE SANDERS**　　　　　**PLAINTIFFS**

**V.**　　　　　　　　　　　　　　　　　**CIVIL ACTION NO.1:07CV988 LTS-RHW**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY**　　　　**DEFENDANT**

**OPINION AND ORDER**

The Court has before it the following motions *in limine* filed by Nationwide Mutual Insurance Company (Nationwide) seeking to exclude:

Evidence Testimony or Argument Relating to (1) Plaintiffs, Claim for Emotional Distress and (2) Opinion Testimony of Linda Holder [151];

Any and All Testimony, Evidence and Argument regarding Plaintiff Billy Sanders' alleged conversations with Independent Engineer Paul Holman [153];

**Evidence of Plaintiffs' Emotional Distress and the Testimony of Linda Holder Motion [151]**

Nationwide asserts that Plaintiff Judy Diane Sanders (Sanders) should not be allowed to present evidence of her mental or emotional distress. Nationwide contends that if this claim is based on a theory of negligence, the lack of any physical manifestation of injury precludes recovery under *American Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196 (Miss.2001). Nationwide asserts that there is insufficient evidence of any deliberate misconduct, i.e. bad faith in adjusting the plaintiffs' claim, to support a recovery for this type of damage.

Linda Holder (Holder) is a social worker who interviewed Sanders, and she has been identified by the plaintiffs as a witness who may testify concerning her impressions during this interview. Nationwide objects to Holder's testimony on the grounds that she will be giving an expert opinion which has not been properly disclosed during discovery.

The Mississippi Supreme Court has long relied on a rule that simple negligence, without proof of bodily injury, would not support a recovery of damages for mental and emotional distress. This rule allowed for an award of damage for mental and emotional distress without bodily injury only in cases of deliberate misconduct. In *Wilson v. GMAC*, 883 So.2d 56, 66 (Miss.2004), the Court stated:

> *. . .unless the facts show that either Defendant's conduct was outrageous, evoked revulsion, done intentionally with a reasonably foreseeable result, and done for the purpose of causing hardship, a claim for emotional distress cannot recover.*

The Court went on to find:

> *There is not evidence that Defendants did anything intentionally with a foreseeable result of harm to the Plaintiff. There is not evidence that the Defendants did anything that would be seen as extreme or outrageous. And except for Plaintiff's complaint that she lost sleep, was upset and had bad dreams, there is not evidence that would support a judgment for emotional distress. Under* Gamble*,* Morrison*, and* American Bankers'*, this Court holds that a judgment for emotional distress cannot rest upon just those things.*

Just a year ago, in *Hudson v. Palmer*, 977 So.2d 369, at 384 (Miss. Ct. App. 2007), the Mississippi Court of Appeals interpreted the *Wilson* decision:

> *First, the trial court noted that the law of this state requires a plaintiff seeking emotional distress damages from ordinary negligence show some physical manifestation of injury or demonstrable physical harm, and found that Hudson failed to sufficiently allege any physical injury. While there have been two lines of thought followed on this issue, the supreme court has recently stated that a plaintiff seeking emotional damages as a result of ordinary negligence must show some resulting demonstrable harm.* [citing *Wilson v. GMAC*].

It is against this background that a unanimous Court in *United American Insurance Company v. Merrill*, 978 So.2d 613, at 624 (Miss.2007), held that a plaintiff in an action for breach of a life insurance contract was entitled to an award of damages for mental and emotional distress based upon this evidence:

> *At trial, Natalie [the plaintiff] testified that because of the denial of her claim, she was forced to take out a loan to pay Robert's [the insured] burial expenses of $5,583.00. Natalie made payments if $136.82 a month on the loan, and at the time of trial had paid $369.47 in interest. She stated she paid this loan for a period of forty-eight months. Natalie testified that it was necessary for her to work to pay off the loan. Natalie, age 71 at the time of trial, worked the graveyard shift at the Boomtown Casino from 11:30 p.m. to 7:30 a.m. Natalie testified she worked forty hours a week at the casino. Natalie testified she was "under great stress" trying to pay her bills and that she had seen a doctor because of "stress" and "nervousness." Natalie testified she further suffered anxiety when United sent two agents to her home* after her claim had been denied *to tell her that her policy had lapsed due to unpaid premiums. Natalie testified it made "her feel bad because they didn't pay me in the first place, and*

*then they come sending their men to my door." Natalie further testified this lawsuit caused her anxiety and was "upsetting her."*

The Court determined, at page 630: ". . . Natalie presented proper evidence for compensation of emotional distress."

In *Merrill*, the Court framed the defendant's potential liability for mental and emotional distress in terms of foreseeability, and the Court quoted at length (at page 630) from *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290 (Miss.1992). Ultimately, the Court in *Merrill* held that the plaintiff's mental and emotional distress were the foreseeable consequences of the breach of the life insurance policy at issue. Because the claims in this case are, like the claims in *United American Insurance Company v. Merrill,* 978 So.2d 613 (Miss.2007), based upon allegations of negligence in the payment of insurance benefits, I will follow the *Merrill* ruling and hear the evidence concerning the plaintiff's emotional distress.

Holder will not be allowed to express her opinion concerning the plaintiff's mental and emotional state beyond the restriction of Rule 701 of the Federal Rules of Evidence, but I will hear her testimony concerning her observation of the plaintiff at the time they conversed.

Nationwide's motion [151] to exclude this evidence will be **DENIED**.

**Plaintiff Billy Sanders' Account of His Conversation with Paul Holmes Motion [153]**

Nationwide seeks to exclude Plaintiff Billy Sanders' (PBS) testimony concerning a telephone conversation he claims to have had with Paul Holman (Holman), an engineer based in Jackson, Mississippi, and retained by Nationwide to inspect the insured property. Holman did not inspect the plaintiffs' property, and Nationwide ultimately sent another engineer to do the inspection.

Before Nationwide decided to send the second engineer, PBS claims to have had a telephone conversation with Holman, and from this conversation PBS inferred that Holman had declined Nationwide's request to conduct an inspection because in his (Holman's) opinion there was more wind damage in the vicinity of the plaintiffs' property than Nationwide was willing to admit, concluding that he (Holman) had a conflict with Nationwide's assessment of the cause of damage in this area.

PBS testified about this conversation very briefly during his deposition: *The first engineer was from Jackson, Mississippi, and I had his name for a long time, but I forgot it. He denied to even come after 30 days of me waiting on him. He said there was too much wind damage in there, and it would be conflicts between his–this–what actually happened, and it y'alls – it was Nationwide's engineer.*

Nationwide asserts that Holman's reference to "too much wind damage in there" refers to the amount of wind damage in the Jackson area that precluded Holman's taking the assignment to inspect the plaintiffs' dwelling. Nationwide seeks exclusion of PBS's account of this conversation on two grounds: 1) it is hearsay inadmissible under Federal Rules of Evidence 801(c) and 802; and 2) the probative value of the testimony is outweighed by the risk that it will cause unfair prejudice to Nationwide, relying on Federal Rules of Evidence 403. Holman's statements are inadmissible hearsay unless they are admissions by an agent of Nationwide. There is insufficient evidence before me to determine whether Holman was acting as a representative of Nationwide at the time he made the statements PBS recalls. Accordingly, I will deny Nationwide's motion at this time and await the evidence on Holman's status at the time of his conversation with PBS. Nationwide's motion to exclude the plaintiff's testimony concerning his conversation with Holman is **DENIED** [153].

**SO ORDERED** this 18th day of December, 2008.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE